UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| V.             ) | Criminal No. 06-271 (PLF) |
| ) | |
| ) | |
| GUSTAVO VILLANUEVA-SOTELO ) | |

**MOTION TO SUPPRESS STATEMENT, OR,
IN THE ALTERNATIVE, MOTION IN LIMINE**

Defendant, by and through undersigned counsel, Steven R. Kiersh, moves this Honorable Court to suppress as evidence against him a written statement that was provided to United States Immigration Officer Mark C. Leeper on August 5, 2006.

**I. Introduction**

Defendant, Gustavo Villanueva-Sotelo, was taken into custody by four law enforcement officers on August 5, 2006. The detention occurred in the 1700 block of Columbia Road, N.W., Washington, D.C. On August 16, 2006, United States Magistrate Judge Alan Kay issued a warrant for defendant's arrest. Defendant was arrested on August 23, 2006 by ICE Agent Mark C. Leeper.[1]

On August 5, 2006, defendant provided a written statement to Agent Leeper. The statement is memorialized in a document entitled "Record of Sworn Statement in Affidavit Form" and attached hereto and identified as Defense Exhibit #1. The statement included within said form is the subject of this Motion to Suppress.

---

[1] Following his initial arrest on August 5, 2006, defendant was taken to a holding facility in Fairfax County. This is the location where the written statement was obtained. Defendant was then transferred to the Arlington County Detention Center, moved back to Fairfax County, taken to a holding facility in Pomonkey, Virginia and finally returned to the District of Columbia following the filing of the arrest warrant.

On September 12, 2006 a three count indictment was retuned charging defendant with the following offenses: Unlawful reentry of a removed alien, 8 U.S.C. §1326(a) and (b)(1); Possession of fraudulent documents for authorized stay or employment, 18 U.S.C. §1546(a); and Aggravated identity theft, 18 U.S.C. §1028A(a)(1).

Defendant is a citizen of Mexico and cannot converse in the English language. At the time that the subject statement was taken from defendant, the only individuals who were in the room with him were law enforcement officials. It was only these individuals who could have served as an interpreter for defendant. The narrative comments that are contained in the Record of Sworn Statement are written in English and not translated into Spanish.

There is no evidence that defendant was provided with *Miranda* warnings prior to providing the written statement.

**II. Admission of the Defendant's Statement Would Violate His Rights Under the Self-Incrimination Clause of the Fifth Amendment**

The Fifth Amendment to the United States Constitution provides that "[N]o person . . . shall be compelled in any criminal case to be a witness against himself." Police interrogation of a suspect in custody threatens the exercise of the Fifth Amendment privilege against self-incrimination by providing officers with an opportunity to: (1) actively compel confessions through overtly coercive interrogation or (2) passively compel confessions by exposing suspects to the inherently coercive environment created by custodial interrogation. See *New York v. Quarles, 467 U.S. 649 (1984)*.

The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution is violated by the failure to administer adequate warnings as required by *Miranda v. Arizona*, 384 U.S. 1 (1966) and by the failure to obtain a valid waiver of the constitutional rights which Miranda is designed to safeguard. The government bears a heavy burden when it attempts to demonstrate such a waiver. *Tague v. Louisiana*, 444 U.S. 469 (1980). In order for a waiver of a suspect's rights to be effective, it must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

The typed language in the Record of Sworn Statement does not in any manner suggest that defendant was advised of his rights to counsel and certainly does not suggest that he had an option to speak with legal counsel before deciding whether to provide a statement. The form simply states as follows: "I am willing to make a statement without anyone else being present." It cannot be said that defendant made a knowing and intelligent waiver of his rights where there is no evidence to demonstrate that he was informed of what his rights were.

The threshold question to be addressed is whether defendant was in custody at the time of the interrogation. An individual is in custody for Miranda purposes only when there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler, 463 U.S. 1121, 1125 (1983)*. Whether the

curtailment of freedom rises to that level is to be assessed by reference to "how a reasonable man in the suspect's position would have understood his situation." *Berkemor v. McCarty*, 468 U.S. 420, 440 (1984). The determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).

At the time of the statement the objective circumstances of the interrogation before the court could not more clearly demonstrate that defendant was in custody. He had been taken off the street on Columbia Road, N.W., Washington, D.C. and placed into the custody of the several law enforcement officials before being transferred to the Department of Homeland Security/U.S. Immigration and Customs Enforcement. Defendant was not free to leave the location of his interrogation. There is no doubt that the setting of the interrogation was custodial. Accordingly, appropriate *Miranda* warnings were required before an interrogation could commence.

The possibility of coercion inherent in custodial interrogation unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated. See *Dickerson v. United States*, 530 U.S. 428, 434-435 (2000). "To protect against this danger, the Miranda rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." *United States v. Patane*, 542 U.S. 630, 639 (2004).

### III. Deportation Proceedings as Opposed to Criminal Proceedings

Defendant is aware that deportation proceedings are deemed to be civil in nature and thus "the presence of counsel during interrogation, and other Sixth Amendment

4

safeguards, are not applicable to deportation proceedings." *Lavoie v. I.N.S.*, 418 F.2d 732, 734 (9th Cir. 1959). However, where the proceeding is criminal in nature the protections afforded by Miranda do apply.

> Given the differences between a deportation hearing and a criminal trial and the fact that Miranda warnings are not mandated by the Constitution itself, we conclude that, although the lack of Miranda warnings would render an alien's statement, made during a custodial interrogation, inadmissible in a criminal prosecution for violation of the immigration laws . . . . *Chavez-Raya v. I.N.S.*, 519 F.2d 397, 402 (7th Cir. 1975). Citations omitted, emphasis supplied.

### IV. Conclusion

There is no real dispute that defendant was in custody at the time that he was interrogated by ICE Agent Leeper. It is equally clear that defendant was not provided with requisite Miranda warnings prior to commencement of the interrogation. There was a substantial likelihood that the detention and interrogation of defendant could have resulted in a criminal prosecution. Indeed, a criminal prosecution has occurred. The statement obtained from defendant was done so in violation of his Fifth Amendment privilege against self-incrimination and should be suppressed as evidence against him.

### V. Alternatively, If the Court Does Not Grant the Motion to Suppress Statement Defendant Moves In Limine As to the Statement

In the event that the court does not grant defendant's Motion to Suppress Statement, defendant alternatively moves the court to preclude the admission of the written statement on grounds that the statement is hearsay and does not fall within any recognized exception to the rule prohibiting the introduction of hearsay testimony. In support thereof, defendant sets forth as follows: Pursuant to the Fed. R. Evid. 802, hearsay evidence is generally excluded from testimony. An exemption to the hearsay

rule are admissions by a party opponent or a party opponent's agent. Fed. R. Evid. 801(d)(2). In the typical situation, an interpreter is permitted to express the words of the speaker because "an interpreter is no more than a language conduit and therefore his translation [does] not create an additional level of hearsay." *United States v. Lopez, 937 F.2d 716, 724 (2nd Cir. 1991)*, citing *United States v. Koskerides, 877 F.2d 1129, 1135 (2nd Cir. 1989)*.

The government does not have unrestricted ability to nominate an interpreter and avoid hearsay challenges. It is not simply a question of whether the interpreter was capable in translating the language in issue. Rather, allowing the interpreter to testify as to the purported statements is an individual determination to be made by the trial court. "The better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991).

In *United States v. Jose Maria Sanchez-Godinez*, 444 F.3d 957 (8th Cir.2006), the Court expressed concern about the admissibility of statements purportedly made in Spanish by a defendant to an interpreter. The interpreter was acting in dual capacity as both a translator and as a federal law enforcement officer.

Sanchez-Godinez had been arrested after a narcotics-trained canine sniffed drugs in his vehicle following a stop for speeding. He was taken into custody, given his *Miranda* warnings, and questioned. Sanchez-Godinez was able to communicate in English; however, he preferred to answer questions in Spanish. A special agent of the ATF was called in to serve as a Spanish interpreter. The agent testified that during the interview he acted as "both a translator and as a federal law enforcement officer."

6

During the interview Sanchez-Godinez had questions posed to him in Spanish by the ATF agent who was translating the questions posed in English from the other officer. Sanchez-Godinez answered the questions in Spanish and the ATF agent translated the answers into English.[2]

A hearsay objection was made to the trial court when the ATF agent was called to testify about Sanchez-Godinez's statement at trial. The objection was overruled. The Circuit expressed reservations about the trial court's determination. "Because Jauregui (ATF agent) was not merely acting as "language conduit," but rather initiated at least some of the questions posed in the interview, his out-of-court statements raise hearsay concerns." *Id. at 960-961*, citation omitted.

In this particular instance, all of the questioning of defendant was done by Agent Leeper who was acting in a dual capacity as interpreter and a law enforcement officer.

There is no valid explanation why an independent interpreter was not made available to defendant prior to the interrogation and there is no valid reason why the interrogation was not recorded. Such a procedure has been recognized as appropriate in a situation such as the one before the court. "Where translation is needed in the course of an open investigation or interrogation following arrest, there is no reason why the interview cannot be recorded and/or the translation cannot be conducted by a certified translator who can be available to testify at trial. *Nazemian*, *948 F.2d at 527, n.7.*

The interrogating agent was not acting merely as a language conduit. Accordingly, his anticipated testimony concerning the substance of defendant's responses to interrogation should be excluded as hearsay.

---

[2] Sanchez-Godinez had the ability to answer some questions in English and clarified in English some answers given by the ATF agent.

                              Respectfully submitted,

                              _____
                              Steven R. Kiersh #323329
                              717 D Street, N.W., Suite 400
                              Washington, D.C. 20004
                              (202) 347-0200