**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**


**v.**                                                    **Criminal No.   06-271 (PLF)**


**GUSTAVO VILLANUEVA-SOTELO**


**MOTION TO DISMISS COUNT III**
**OF THE INDICTMENT**

Defendant, by and through undersigned Counsel, moves the Court to dismiss

Count III of the indictment.[1] In support thereof, Defendant states as follows:


**I.)   PROCEDURAL HISTORY**

On May 11, 2006, Defendant was indicted for the following three offenses.

Unlawful Reentry of a Removed Alien in violation of 8 U.S.C. §1326(a) and (b) (1);

Possession of Fraudulent Document Prescribed for Authorized Stay or Employment in

violation of 18 U.S.C. §1546 (a); and Aggravated Identity Theft in violation of 18 U.S.C.

§1028A(a)(1).

Pursuant to an agreement reached between the parties, Defendant agreed to enter

pleas of guilty to Counts I and II of the indictment.[2] Defendant informed the Court that he

could not enter a plea of guilty to Count III because there was an open legal question

---

[1] Count III of the indictment charges a violation of 18 U.S.C. §1028 A(a)(1). The statute became law on July 15, 2004, as Pub.L108-275, §2(a), 118 Stat. 83.

concerning whether the United States possessed a factual foundation to convict him of Aggravated Identity Theft.

The Court allowed the parties time to submit legal memoranda related to the interpretation of the Aggravated Identity Theft Statute. Argument concerning the remaining Count is now scheduled for April 4, 2007.

II.) **LEGAL ISSUE PRESENTED**

At issue is the interpretation of the Aggravated Identity Theft Statute, 18 U.S.C. §1028(a)(1) which states in relevant part:

> (1) In general. Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person, shall in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of two years.

Specifically, Defendant maintains that the term "knowingly" as applied to "another person" requires the United States to prove that he had actual knowledge that the identification belonged to another existing person at the time of the commission of the offense. This actual knowledge is an essential component of the *mens rea* under the statute.[3]

Defendant provided the Court and the United States with a list of six cases that have addressed the legal issue presented herein and will discuss those opinions further in this Motion. The United States Court of Appeals for the District of Columbia Circuit has not had occasion to consider this issue.

---

[2] The Court accepted Defendant's pleas of guilty to Counts I and II on January 22 , 2007.
[3] The United States has conceded that it does not have evidence that Defendant knew the subject document belonged to an actual person.

### III. FACTUAL HISTORY

Gustavo Villanueva-Sotelo, a Mexican National illegally in the United States, was arrested on Columbia Road, N.W., Washington, D.C. on August 5, 2006, by the Metropolitan Police Department. His arrest was directed by Immigration and Custom Enforcement (ICE) which was conducting an investigation of the identity theft trade in the District of Columbia.

A search incident to the arrest of Defendant produced a Permanent Resident Card and a Mexican Metricula.[4] The Permanent Resident Card has Defendant's photograph, his name, an Alien Registration Number, a date of birth of January 12, 1971, and identifies Mexico as the country of origin. Permanent Resident Cards are documents issued by the Department of Homeland Security  that serve as proof that an alien has been legally admitted to the United States.

### IV. ARGUMENT

At its core, this case presents a situation where a person using his own name and his own photograph on an admittedly phony Permanent Resident Card is facing the prospect of a mandatory period of incarceration of two years. There is no evidence that the Card ever belonged to any other person and, most importantly, there is no evidence that defendant ever knew the card belonged to any other person. If the Court were to agree with the argument of the United States, the Defendant will be facing this severe sanction for an act for which there is no victim. Mr. Villanueva-Sotelo did not steal identification documents of another person and did not know whether the number on the

---

4 These documents were the subject of a motion to Suppress Evidence that was denied by the Court.

false Permanent Resident Card had ever been issued to another person. This is surely not what Congress intended when it passed the subject Act.

As stated above, there have been a total number of six decisions interpreting 18 U.S.C. §1028(a)(1). In chronological order, the cases are as follows: *United States v. Montejo*, 353 F.Supp. 2d 643 (E.D. Va January 18, 2005); *United States v. Beacham*, 399 F.Supp. 2d 1156 (W.D. Wash. November 21, 2005); *United States v. Crounsset*, 403 F.Supp. 2d 475 (E.D. Va. November 21, 2005);*United States v. Montejo*, 442 F.3d 213, (4ᵗʰ Cir., March 29, 2006) *United States v. Contreras-Macedas*, United States District Court for the District of Columbia, Criminal Case No. 05-246 (RMC), decided June 20, 2006; *United States v. Hines*, 2007 U.S. App. LEXIS 304, (8ᵗʰ Cir., January 8, 2007).[5]

In *Montejo* the District Court confronted the identical legal issue presented herein: Whether §1028(a)(1)'s *mens rea* requirement applies to only the conduct proscribed by the statute—transfer, possession, or use—or instead extends to other elements of the offense, in particular the object used to carry out the proscribed conduct: another person's means of identification. The Court was called upon to consider the issue pursuant to Defendant's Motion for Judgment of Acquittal wherein he argued that the government did not prove an essential element of the identity theft statute—knowledge that the means of identification he possessed actually belonged to another person.

The *Montejo* Court correctly determined that §1028A(a)(1) had a *mens rea* requirement. However, the Court undertook a very narrow interpretation of the knowledge of wrongdoing required for a conviction under the statute. "Ordinarily, qualifying words, such as 'knowingly' in §1028(a)(1), apply only to their immediate

---

[5] The Eight Circuit case has limited applicability to this matter. Therein, the charged party admitted to using the name and social security number of an actual person.

4

antecedent. Since the term "knowingly" is immediately antecedent to the phrase "transfers, possesses, or uses," it must be read only to qualify those words" 353 F.Supp 648, citations omitted.

In evaluating *Montejo*, Defendant urges this Court to consider the following language of that opinion as it is spells out exactly why the position of the United States is flawed:

> Indeed, it is odd—and borders on the absurd—to call what Montejo did "theft". Montejo did not deprive the means of identification from its true owner." He merely used a means of identification he knew to be false with respect to himself in order to gain employment. Thus, it is evident that Montejo is not a thief in the traditional sense of the word. The person who sold Montejo the means of identification may have deprived it from its true owner, but Montejo, based on stipulated facts, did not. Id at 654.

Defendant submits that the only justification for allowing an "absurd" result in *Montejo* was the Court's conclusion that the plain meaning of the statute is clear and unambiguous.

Defendant agrees with the *Montejo* Court that "The Supreme Court has long recognized that determining the mental state required for commission of a federal crime requires construction of the statute and…inference of the intent of Congress. That is especially the case when ascertaining the scope of the *mens rea* requirement of Federal crimes, which are crimes only by virtue of having been promulgated by Congress" Id. at 647, citing *Liparota v. United States*, 471 U.S. 419,424 (1985).

Defendant suggests that if the *Montejo* Court had continued to follow the reasoning of *Liparota* a different result would have been reached. *Liparota* involved construction of a statute similar to the one herein. The relevant portion of the statute

interpreted in *Liparota* read as follows: "Whoever knowingly uses, transfers, acquires, alters or possesses coupons or authorization cards in any manner not authorized by this Chapter or the regulations issued pursuant to this Chapter…(7 U.S.C. §2024(b)(1)".  The question presented was framed as "whether in a prosecution under this provision the Government must prove that the Defendant knew that he was acting in a manner not authorized by statute or regulation." Id. at  420-421. The question addressed in *Liparota* and pending before this Court is how far the statutory "knowing" requirement extends. In *Liparota*, the Supreme Court recognized the ambiguity of the statute in issue within the same context presented herein—"knowingly". Relying on a well recognized treatise, the Court observed:

> Still further difficulty arises from the ambiguity which frequently exists concerning what the words or phrases in question modify. What, for instance, does "knowingly" modify in a sentence from a 'blue sky' law criminal statute punishing one who 'knowingly sells a security without a permit' from the securities commissioner? To be guilty must the seller of a 'security' without a permit know only that what he is doing constitutes a sale, or must he also know that the thing he sells is a security, or must he also know that he has no permit to sell the security he sells? As a matter of grammar, the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel—whether it modifies 'sells', or 'sells a security', or 'sells a security, without a permit'. W. LaFave & A. Scott, Criminal Law §27 (1972). Id 424, Note 7.

*Liparota* ultimately adopted a broad view of "knowingly" requiring proof that the Defendant was aware of the statutory violation as a necessary predicate for conviction. "Absent indication of contrary purpose in the language or legislative history of the statute, we believe that §2024(b)(1) requires a showing that the Defendant knew his conduct to be unauthorized by statute or regulation." Id. at  425.

Defendant suggests that the language in §1028A(a)(1) is similarly ambiguous to the statute construed in *Liparota*. An ambiguous statute resulting in an absurd result should not be sanctioned by this Court.

*United States v. Beacham*, supra, involved an individual using social security numbers that did not belong to her to open bank accounts under false identities. It was the charged party's claim that numbers used by her were generated arbitrarily and did not belong to an actual person. Unknown to the defendant, the numbers turned out to belong to actually existing individuals. The legal issue presented, whether Defendant had to know that the identification documents belonged to an actual person, is the identical issue presented herein.

While recognizing that *Montejo* relied on what it found to be the statute's plain language, *Beacham* reached an entirely different result determining that the *mens rea* requirement extended to knowledge of another person. "In reaching this decision, this Court was also persuaded by the facts that the title of 18 U.S.C. §1028A is Aggravated Identity Theft and that the legislative history of the statute speaks directly about, 'provid[ing] enhanced penalties for persons who steal identities.' H.R. Rep. 108-528 , 2004. Id. at 1158

Two trial courts of the United States were called upon to interpret the identical legal issue arising from a newly enacted provision of the United States Code. Both trial courts carefully considered the issue and reached entirely different conclusions concerning the construction of the statute and the intent of Congress. Those differing

results unquestionably demonstrate that there is statutory ambiguity as to whether the word "knowingly" modifies the phrase "a means of identification of another person."[6]

*United States v. Crounsset*, supra, was decided the same day as *Beacham*. *Croussnet* and *Montejo* were both decisions of the United States District Court for the Eastern District of Virginia.[7] In addressing the common issue concerning the *mens rea* requirement, the *Croussne*t Court simply followed *Montejo*. "[T]he statute does not require that the Government prove, in addition, that Defendant knew that the identification information contained in the fraudulent passport belonged to an actual individual" 403 F. Supp 2d. 483. This is essentially what occurred when the Fourth Circuit had occasion to consider *Montejo* on direct appeal.

Judge Collyer's Memorandum Opinion of June 20, 2006, is the only discussion of 1028A(a)(1) issued in this jurisdiction. Ultimately, the Court held that "knowingly" applies to the conduct involved (transfer, possession or use) and agreed with the Government that the defendant did not have to know that the identification numbers on the fraudulent documents belonged to an actual person.[8]

The opinion of Judge Collyer analyzed the other cases that had to date addressed the issue and chose to agree with the reasoning of *Montejo* "[w]hen a Court considers the plain language of a statute, words are generally modified by their direct antecedents." Opinion pages 15-16.

---

[6] "Ambiguity: an expression whose meaning cannot be determined from its context. Unclearness by virtue of having more than one meaning." Webster's OnLine Dictionary.
[7] *Croussnet* was decided by the Alexandria Division. *Montejo* was decided by the Norfolk Division.
[8] The opinion of Judge Collyer has not been appealed to the United States Circuit Court of Appeals for the District of Columbia Circuit.

Judge Collyer appeared to have distinguished her case from *Beacham* based upon an alternative analysis of *United States v. X-Citement Video, Inc*., 513 U.S. 64 (1994)[9] While recognizing that the Supreme Court did indeed set aside plain language of the statute in order to create a *means rea*, Judge Collyer again agreed with the *Montejo* Court noting that *X-Citement Video* is binding authority that the "*mens rea* requirement be extended only insofar as to protect otherwise "innocent conduct." Opinion, page 16.

Defendant acknowledges that courts have in the past extended *mens rea* statutory reach in order to avoid punishing specifically otherwise "innocent conduct". See *Morrissette v. United States*, 342 U.S. 246 (1952). However, Defendant urges this Court not to adopt the notion that protecting *only* otherwise "innocent conduct" is the holding of *X-Citement Video, Inc.* The notion of criminalizing otherwise innocent conduct was just one factor that the Court looked to in trying to ascertain what was meant by the subject statute. Citing language from *Staples v. United States*, 511 U.S. 600 (1994), the *X-Citement Video, Inc*. Court equally acknowledged the following concern: "The Court also emphasized the harsh penalties attaching to violations of the statute as a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." Id. at 71.

The Rule of lenity is applicable where Congressional intent is not clear even if the Defendant is not engaged in otherwise "innocent conduct". "When choice has to be made between two readings of what conduct Congress has made a crime, it is not inappropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some

---

[9] The *Beacham* Court placed great reliance on *United States v. Meek*, 366 F.3d. 705 (9th Cir. 2004) which was based upon that Circuit's interpretation of *United States v. X-Citement Video*.

ambiguous application." *United States v. Universal C.T.T. CreditCorp*, 344, U.S. 218, 221-22. "The policy of lenity means that the Court will not interpret a Federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Whalen v. United States*, 445, U.S. 684, 695 n.10 (1980) "[w]here there is ambiguity in a criminal statute, doubts should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. 336 (1971).

In *Bell v. United States*, 349 U.S. 81 (1955), a party entered pleas of guilty to two counts of violation of the Mann Act, 18 U.S.C. §2421, for knowingly transporting in interstate commerce two women for an immoral purpose. The District Court rejected the Defendant's contention that because he transported the women on the same trip and in the same vehicle he committed only a single offense and could not be subjected to cumulative punishment. The sentence was affirmed on direct appeal with the court holding that while there was a single offense of transportation, the unlawful purpose was personal as to each of the two women.

On certiorari, the judgments were reversed. The Court recognized that there could be reasonable but contrary interpretations of the sentencing scheme envisioned by the Mann Act. "It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions" 349 U.S. at 83. When after reasonable analysis an ambiguity remains, the Supreme Court instructed that resolution should be in favor of the person charged. "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity" Id.

The conduct in *Bell* surely can not be characterized as otherwise innocent. Nevertheless, where there existed an ambiguity in the controlling statute, judicial interpretation of Congressional intent went to the benefit of the person facing criminal penalty. Given that careful and thoughtful consideration has been given to Congressional intent in the enactment of §1028A(a)(1), and there have been entirely different interpretations of the intent of Congress, the Rule of lenity mandates that in order to convict Defendant the Government must prove that Villanueva-Sotelo knew that he possessed the means of identification of another actual person.

Defendant is facing sentencing for possession of a forged, counterfeited, altered and falsely made Permanent Resident Card in violation of 18 U.S.C. §1546(a) (Count Two of the Indictment). He freely acknowledged his responsibility for that act. It is the same Permanent Resident Card that is the subject of the Aggravated Identity Theft Count. It is agreed that there is no evidence to suggest that Defendant knew that the card was the means of identification of another person while he was in possession of the card. Knowledge that the card belonged to another person is the distinguishing element between the two offenses. Common sense suggests that Congress intended there to be a *mens rea* requirement that extended to every element in the offense or it would be imposing separate sanctions for the same offense.

Villanueva-Sotelo intended to possess a false Permanent Resident Card but there is no evidence to suggest that he intended to steal the identity of another person. To find otherwise, the full *mens rea* requirement of 1028A(a)(1) will be eliminated and the government's burden of proof as to an essential element will be satisfied simply due to his bad act of possessing a forged document. This would result in him being punished for

11

what he did not intend to do. Further, if the knowingly requirement does not extend to "of another person", then the statutory language of §1028 would be nothing more than surplusage.

In *Arthur Andersen, LLP v. United States*, 544 U.S. 696 (2005), the Court was called upon to consider the language of 18 U.S.C. §1512 (b)(2) which states in relevant part: "Whoever knowingly uses intimidation, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person , with intent to—

(2) cause or induce a person to—"

At issue was a ruling of the United States Court of Appeals for the Fifth Circuit. "It held that that the jury instructions properly conveyed the meaning of 'corruptly persuades' and 'official proceeding'; that the jury need not find any consciousness of wrongdoing" Id. at 702. Certiorari was granted because the Court recognized a split of authority concerning construction of the statute. The specific inquiry was "what it means to 'knowingly…corruptly persuade' another person…"Id. at 703.

The Government argued that "knowingly" does not modify 'corruptly persuades'. This interpretation was flatly rejected."(T)hat is not how the statute naturally reads. It provides the *mens rea* –knowingly—and then a list of acts—'uses intimidation or physical force, threatens, or corruptly persuades.' We have recognized with regard to similar statutory language that the *mens rea* at least applies to the acts that immediately follow, if not to *othe*r elements down the statutory line" Id. at 705, other citations omitted. The Court reversed the ruling of the Fifth Circuit with language directly applicable to the circumstance presented herein:" Only persons conscious of wrongdoing

can be said to 'knowingly…corruptly persuade'. And limiting criminality to persuaders conscious of their wrongdoing sensibly allows §1512(b) to reach only those with the level of 'culpability…we usually require in order to impose criminal liability'. Id. at 706. citations omitted.

If §1028(A) is to be sensibly applied to Mr. Villanueva-Sotelo, then it must be shown that he knowingly possessed the identity of another person. As that evidence is not before the Court, defendant should not be exposed to the severe mandatory sentencing sanctions required by the statute.

## V. CONCLUSION

Defendant respectfully acknowledges the very careful consideration that this issue has been given by other Courts of the United States. Defendant does not agree with those courts that have ruled that the language of §1028(A) is plain and unambiguous. It is inconceivable that Congress intended the absurd and harsh result of imprisoning a person for two years for a theft that simply did not occur. For the reasons stated herein, defendant prays this Honorable Court dismiss Count III of the Indictment.

Respectfully submitted,

_____
Steven R. Kiersh #323329
717 D Street, N.W., Suite 400
Washington, D.C. 20004
(202) 347-0200

Counsel for Gustavo Villanueva-Sotelo

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CETIFY, that a true and accurate copy of the foregoing Motion to Dismiss Count III of the Indictment was served, via electronic filing, upon Frederick Yette, Esquire, Assistant U.S. Attorney, 555 4th Street, N.W., Washington, D.C. 20001 on this the 26th day of February, 2007.

_____

Steven R. Kiersh