IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 006-271 (PLF) |
| v. | : |
| GUSTAVO VILLANUEVO-SOTELO, | : |
| Defendant. | : |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNT III OF THE INDICTMENT**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss Count III of the Indictment. In support of its opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

### ARGUMENT

A. <u>The plain language of the statute requires proof only that the defendant knowingly possessed a fraudulent identity document.</u>

Count III of the Indictment charges the defendant with Aggravated Identity Theft, under 18 U.S.C. § 1028A, because he was arrested while in possession of a fraudulent permanent resident card that bore his photo and an alien number that belongs to a real person other than the defendant.[1] The

---

[1] The language of § 1028A(a)(1) states:

Whoever, during and in relation to any felony violation enumerated in subsection (c), **knowingly transfers, possesses, or uses**, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years. (emphasis added)

defendant contends that Count III should be dismissed because the government cannot prove that he knew that the "means of identification," *i.e.*, the alien number, belonged to a real person. In the government's view, the defendant is guilty of Aggravated Identity Theft even if he did not know that the alien number belonged to a real person, as long as he knowingly possessed the fraudulent permanent resident card with someone else's alien number.

Although few reported cases have discussed the Aggravated Identity Theft statute, a conflict has developed regarding the *mens rea* requirement of the statute. The defendant's position is supported by U.S. v. Beachem, 399 F.Supp.2d 1156, 1158 (W.D. Wash. 2005), which held that "the United States must provide proof that [the defendant] had knowledge that the identification [he] used belonged to another person." On the other hand, the government's position is supported by and fully explained in U.S. v. Contreras-Macedas, 437 F.Supp.2d 69 (D.D.C. 2006), and the case it relies upon for support, U.S. v. Montejo, 353 F. Supp. 2d 643 (E.D. Va. 2005)("Montejo I"), affirmed 442 F.3d 213 (4th Cir. 2006)("Montejo II"). In Montejo I, the district court framed the argument this way:

> The Government asserted that all § 1028A(a)(1) requires is that the accused knew that the means of identification he transferred, possessed, or used was not his own, regardless of whether he thought it belonged to another person or instead believed that it was fake. Conversely, Montejo argued that § 1028A(a)(1) requires that the accused was aware that the means of identification actually belonged to another individual.

Montejo I, 353 F.Supp. at 646.

Like the courts in Montejo I, and Montejo II, Judge Collyer, in Contreras-Macedas, decided that the Aggravated Identity Theft statute does not require that the government prove that a defendant knows the means of identification belongs to another person. The circumstances in Contreras-Macedas were the same as those in this case: a defendant knowingly possessed a fake identification

card, but there is no evidence that the defendant knew the fake card contained a real identification number, *i.e.*, a real social security number or alien number. Nevertheless, Judge Collyer wrote:

> This Court holds that 'knowingly' applies to the conduct involved (transfer, possession, or use) and agrees with the Government that the Defendants did not have to know that the identification numbers on the fraudulent documents belonged to an actual person.

Contreras-Macedas, 437 F.Supp.2d at 76. See also U.S. v. Crounsset, 403 F.S.upp.2d 475, 483(E.D. Va. 2005)(defendant convicted of Aggravated Identity Theft for presenting a fraudulent passport that contained an alien number assigned to someone else, even though defendant did not know the number belonged to a real person).[2]

The defendant suggests that the statutory language is unclear, and therefore should be construed against the government. The courts in Contreras-Macedas, Montejo I and Montejo II disagreed with this assessment. Judge Collyer observed that the Montejo I "district court discussed statutory interpretation at length, noting that '[o]rdinarily, qualifying words . . . apply only to their immediate antecedent.' . . . The court relied on the 'plain language' of the statute to determine that 'knowingly' modifies 'transfers, possesses, or uses,' and not the phrase 'means of identification of

---

[2]Applying the reasoning of Montejo I, the court in Crounsset held:

> contrary to defendant's contentions, the statute does not require that the government prove . . . that defendant knew that the identifying information contained in the fraudulent passport belonged to an actual individual. To read § 1028A otherwise would effectively narrow the proscribed conduct to include an additional element not expressly required by the plain language of the statute and would impose on the government an often insurmountable burden.

Crounsset, 403 F.Supp.2d at 483

3

another.'" Contreras-Macedas, 437 F.Supp.2d at 76 (citation omitted).[3] Therefore, under the plain reading of § 1028A(a)(1), defendant Villanueva-Sotelo can be convicted if the government proves he knowingly possessed the fake resident alien card, even if he was not aware the "means of identification," that is, the alien number, belonged to another person.

### B. The rule of lenity should not prohibit prosecution because the statute is unambiguous and Congress's intent is clear that prosecution should be permitted.

Citing Liparota v. United States, 471 U.S. 419 (1985), and several other cases, the defendant argues that the language of the Aggravated Identity Theft statute is not as clear as Contreras-Macedas, Montejo I and Montejo II suggest, and since the statute is, in the defendant's view, ambiguous, this Court should apply the "rule of lenity."[4] In Liparota, the issue was whether a

---

[3] The Court in Montejo II explained why the rules of grammar dictated its conclusion that the statute is clear, and therefore does not require that the defendant know the means of identification belongs to another person:

> We begin with grammar. The word 'knowingly' in this case is an adverb that modifies the verbs 'transfers, possesses, [and] uses.'
>
> \* \* \*
>
> We think that, as a matter of common usage, 'knowingly' does not modify the entire lengthy predicate that follows it. . . . Good usage requires that the limiting modifier, the adverb 'knowingly,' be as close as possible to the words which it modifies, here, 'transfers, possesses, or uses.'

Montejo II, 442 F.3d at 215 (citation omitted).

[4] The rule of lenity provides that if the plain language of the statute or its legislative history do not clearly express the intent of Congress, any ambiguity in the statute should be resolved in the defendant's favor. The courts in Contreras-Macedas, Montejo I and Montejo II agreed, however, that "the [Aggravated Identity Theft] statute is not ambiguous, so the rule of
(continued...)

defendant knew that he acquired or possessed food stamps in a manner that violated federal law. The Court determined that the knowledge requirement in the applicable statute was ambiguous, and that absent contrary language in the statute or its legislative history, the statute required a showing that the defendant knew his conduct violated the law. Thus the rule of lenity may be used to avoid an interpretation of a statute that "otherwise would . . . criminalize a broad range of apparently innocent conduct," Liparota, 471 U.S. at 426, and to avoid imposing harsh penalties for violating an ambiguous statute. See U.S. v. X-Citement Video Inc., 513 U.S. 64, 71 (1994).

The rule of lenity "is only applicable where there is a grievous ambiguity or uncertainty in the language and structure of a statute." U.S. v. Byfield, 2006 WL 2228936, *5 (D.D.C. Aug. 3, 2006)(internal citations and quotation marks omitted). The Aggravated Identity Theft statute is not ambiguous. That is because, first, as the Contreras-Macedas and both Montejo decisions explain, the plain meaning of the statute's language is clear. Second, there is no ambiguity because the intent of Congress in passing the statute can be determined. Since the "'rule of lenity comes into operation at the end of the process of construing what Congress has expressed,'" Byfield, 2006 WL at *5 (citation omitted), we must examine the legislative history of the Aggravated Identity Theft statute.

The legislative history supports a broad reading of the statute that will encompass a wide – rather than restricted – range of criminal conduct. As the Court in Montejo II said:

> We agree with the government's construction of the statute, that the defendant need not be aware of the actual assignment of the numbers to an individual to have violated the statute. We are supported in our reasoning by the legislative history of the statute . . . . That legislative history shows that Congress was concerned with aggravated identity theft, exactly what was charged in the indictment in this case.

---

[4](...continued)
lenity does not apply." Montejo, 442 F.3d at 217.

> Montejo stole the identity of two entirely innocent people, the holder of the alien identity number, and the holder of the Social Security number.

Montejo, 2006 WL 785060 at *4.[5]

The legislative history of the Identity Theft Penalty Enhancement Act, H.R. No. 108-528 (June 8, 2004), states that 18 U.S.C. § 1028A was added in large part to increase the penalty for the crime of identity theft: "[t]his section amends Title 18 to provide for a mandatory consecutive penalty enhancement of 2 years for any individual who knowingly transfers, possesses, or uses the means of identification of another person in order to commit a serious Federal predicate offense (. . . including immigration violations, false citizenship crimes, firearms offenses and other serious crimes)." H.R. Rep. 108-528, 2004 WL 1260964 (Leg. Hist.) at *10. The substantive discussion in the legislative history concerning Section 1028A is actually brief and relatively unenlightening. However, Congress also amended 18 U.S.C. § 1028(a)(7) at the same time that it enacted Section 1028A. These provisions, i.e., Sections 1028A and 1028(a)(7), are very similar, and the purpose of Section 1028A can be understood by also considering the legislative history related to Section

---

[5] Montejo purchased the fake social security and alien registration cards and there was no evidence that he knew the cards contained a particular individual's identification number. Nevertheless, the Court viewed his possession of those fake identification cards with real identification numbers as evidence that he had "stolen" the identification numbers. The defendant in this case suggests that the statute should not apply to him because has not knowingly stolen, or committed a "theft" of anyone's means of identification. But, as the district court observed in Montejo I, although the statute is labeled "Aggravated Identity Theft," Section 1028A does not use the word "theft" in its text, and the title of a statute cannot limit the plain meaning of the statute's text. Montejo I, 353 F.Supp.2d at 654. Put another way, a defendant can violate the Aggravated Identity Theft statute without committing a traditional theft. The crime of "identity theft" takes many forms under the statute, and the unlawful conduct often does not involve the type of stealing the defendant claims is necessary.

1028(a)(7).[6]

In describing the amendments to the existing identity theft law, that is Section 1028(a)(7), the legislative history states:

> This section amends the existing identity theft laws to clarify that possession of the means of identification of another person with intent to commit an unlawful act can constitute a crime. **This section will make it easier for prosecutors to convict identity thieves by allowing prosecution for simply possessing false identity documents with the intent to commit a crime.**

H.R. Rep. 108-528, 2004 WL 1260964 (Leg. Hist.) at *10 (emphasis added).

The defendant in this case is the very kind of "identity thief" that Congress hoped could be prosecuted more easily under the revised statutes. Defendant Villanueva-Sotelo possessed a fake permanent resident card with a real alien number with the intent to commit another crime. In this case, the other crime defendant Villanueva-Sotelo committed was presenting his fake permanent resident card to a police officer in an effort to prove his identity and that he was lawfully present in the United States. By doing so, the defendant violated federal law, including 18 U.S.C. § 1546(a), Possession of Fraudulent Document Prescribed for Authorized Stay or Employment, and he has pleaded guilty to that offense.

There is no doubt that Congress, by amending Section 1028(a)(7) and by creating Section 1028A, intended to expand the government's ability to prosecute individuals who possess illegal

---

[6]Section 1028(a)(7) punishes someone who

> knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law . . . .

7

identity documents while committing other crimes. The legislative history describes how certain revisions broaden the reach of Section 1028(a)(7), and explain that the revisions are intended to "provide greater flexibility for the prosecution" so that "prosecutors would have the option of proving that the defendants **either** had the requisite specific intent to commit a particular unlawful activity **or** engaged in the prohibited use, transfer, or possession of others' means of identification in connection with that unlawful activity." H.R. Rep. 108-528, 2004 WL 1260964 (Leg. Hist.) at *11 (emphasis added).

This "either" "or" construction of Section 1028(a)(7) is a strong signal that Congress meant to enable the prosecution of defendants who simply possessed another person's means of identification – even if the defendant did not have "the requisite specific intent" to steal that identification or the specific "knowledge" that he had a particular person's means of identification – as long as the defendant possessed that means of identification "in connection with" other unlawful activity. It is reasonable to attribute this same Congressional purpose to the passage of Section 1028A, the Aggravated Identity Theft statute. In other words, Congress intended to enable prosecution under Section 1028A if the defendant knowingly possessed a fraudulent identity document, even if he did not knowingly steal the particular means of identification on that fraudulent document, as long as the defendant possessed the fraudulent document "during and in relation to any felony violation enumerated in subsection (c)."[7]

The "possession" option for prosecution, under either Section 1028(a)(7) or Section 1028A, does not require "knowledge" that the means of identification belongs to a real person because the

---

[7]In Section 1028A, the phrase "during and in relation to any felony violation enumerated in subsection (c)," is equivalent to the phrase "in connection with, any unlawful activity that constitutes a violation of Federal law," in Section 1028(a)(7).

requisite *mens rea* is provided by the fact that the defendant is knowingly involved with some other unlawful activity while possessing the means of identification. "In other words, using a means of identification that is not one's own, regardless of whether it belonged to someone else, is not lawful or constitutionally protected. [The defendant] may not have known that he was using a means of identification that belonged to someone else, but he did know that he was engaged in otherwise unlawful conduct." Montejo I, 353 F.Supp. 2d at 650. Similarly, defendant Villanueva-Sotelo knew that he was in possession of a fraudulent identity card, and that such possession was illegal. That is sufficient *mens rea* under Section 1028A.

      The legislative history makes it clear that Congress wanted to broaden the government's ability to prosecute individuals who simply possessed another person's means of identification in connection with, or during and in relation to, some other unlawful activity. With respect to Villanueva-Sotelo, the unlawful activity was his knowing possession of the illegal permanent resident card which he then presented to a police officer. That knowing possession of a fraudulent identity document is a "felony violation enumerated in subsection [1028A(c)(7)]," and therefore constitutes the kind of "unlawful activity" that Congress believed should trigger prosecution under Section 1028A if a real means of identification were involved. Requiring the government to prove that the defendant also knew the means of identification (in this case, the alien number) on the illegal identity document actually belonged to a real person would make it tougher, not easier, to prosecute the defendant. That would be contrary to the goal of "mak[ing] it easier to convict identity thieves," H.R. Rep. 108-528, 2004 WL 1260964 (Leg. Hist.) at *10, that Congress expressed in the legislative history.

For the reasons stated, the government believes this Court should conclude that the rule of lenity is inapplicable here because the *mens rea* requirement under the Aggravated Identity Theft statute can be satisfied by showing that the defendant knowingly possessed a fraudulent identity document, even if he did not know the alien number on that document belonged to a real person. That is what the plain language of the statute requires, and the legislative history surrounding the statute confirms that it is Congress's intent to facilitate – not frustrate – the defendant's prosecution under the Aggravated Identity Theft statute.

WHEREFORE, we respectfully request that the Court deny the defendant's motion to Dismiss Count III of the indictment.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By: _____
FREDERICK W. YETTE
Assistant United States Attorney
D.C. Bar No. #385391
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-1666
Frederick.Yette@usdoj.gov