**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| v.  ) | **Criminal No.: 06-271** |
| ) | **(PLF)** |
| ) | |
| **GUSTAVO VILLANUEVA-SOTELO** ) | |
| Defendant  ) | |

**REPLY TO GOVERNMENT'S OPPOSITION TO**
**DISMISS COUNT III OF THE INDICTMENT**

1.) The Legislative History of 18 U.S.C. § 1028A does not criminalize the conduct of Gustavo Villanueva-Sotelo

The plain language of the operative statute does not explicitly or implicitly address conduct such as defendant's. Every comment in the legislative history about the purpose for which the statute was enacted, as well as the name of the statute, clearly and unambiguously suggests that an essential element of the offense is that the perpetrator knew that an actual person's identity was being stolen. If Congress meant otherwise, it had every opportunity to include a strict liability provision within the statute. Such a provision is not present and defendant should not be held liable beyond that which was contemplated by Congress.

Defendant disagrees with the government's assertion that the "substantive discussion in the legislative history concerning § 1028A is actually brief and relatively unenlightening". The Legislative History, reported at 150 Cong. Rec. H. 4808, 108th Congress, 2nd Session, LEXSEE 108 H. RPT. 528, clearly evidences that Congress

enacted the subject statute in order to protect actual people who had their identities stolen.

In moving to establish penalties for aggravated identity theft, Congressman Sensenbrenner addressed a number of instances of conduct involving identity theft. Analyzing those instances of specific conduct is illuminating. Thieves who obtain individual's personal information for misuse through "dumpster diving" and those who access information that was originally collected for an authorized person; a customer service representative who used his position to access personal consumer credit information from 30,000 victims; individual who were charged with fraud for supplying fraudulent social security cards that were purchased from a social security administration clerk. Id.

In each of the instances cited by the Congressman, an actual person was victimized. There is nothing to suggest that this legislation was aimed at victimless crime.

The goals of the statute are laudable. Actual identity theft, misappropriating a personal identification document from a human being, is a documented threat to commerce, a drain on public entitlements such as Medicare and Social Security, and an enormous inconvenience to consumers who have to spend time and resources restoring their credit and identity.

There is, however, nothing in the legislative history to suggest that Congress was contemplating a circumstance where an illegal alien uses a document not to steal the identity of another person; but rather uses a phony identification card for some other purpose such as obtaining employment.

In this instance, there was no person who was harmed, inconvenienced or in any other manner victimized by defendant's conduct. There is no reason to punish defendant's conduct beyond that which he is subject to incarceration for. Both the legislative history of § 1028 A and common sense lead to the conclusion that the acts which defendant acknowledged committing do not amount to the theft of the identity of another person.

According to the record of the Legislative History, "identity theft" occurs when "someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception, typically for economic or other gain, including immigration benefits. Id. Numerous examples of identity theft were then cited by Congress. *United States v. Amry*, where a skimmer was used to obtain credit card data from members of a health club; *United States v. Scheller*, where a financial institution employee used the institution's computer system to wrongfully obtain customer account information; *United States v. Opara*, involving the theft of identities of 24 people for the purposes of submitting bogus tax returns in an effort to misappropriate tax refunds; *United States v. Maxfield*, where a person falsely used the social security number of another person to obtain loans and lines of credit; *United States v. Rodriguez*, where a person used her husband's social security number to obtain additional disability benefits; *United States v. Ferguson*, where stolen identifications were used to receive social security benefits and establish credit; *United States v. Benavides – Holguin*, involving a person fraudulently obtaining Title XVI benefits under the name and social security number of his former brother-in-law; *United States v. Green-Jones*, where a person received SSI benefits under

her actual social security number while employed by the IRS using the social security number of another individual.

Conspicuous by its absence in the legislative history is any reference to a situation where the theft of the identity of another person does not occur.  This cannot be attributed to Congressional oversight.  It is absolutely clear that Congress sought to punish only those who "willfully" obtain and use the identity of another person.  The name of the statute "Aggravated Identity Theft" certainly infers more than happenstance possession of a manufactured means of identification.

The instances cited by Congress demonstrate that the intent contemplated in the statute's enactment required more knowledge than the strict liability structure that the United States is urging this Court to adopt.

Defendant urges the Court to reject the government's suggestion that the amendment to 18 U.S.C. § 1028(a)(7) someone clarifies Congressional intent concerning 1028 A and thus results in a conclusion that aggravated identity theft does not require that the theft be of another actual person's documents.

The purpose for the amendment to § 1028(a)(7) is a follows:

> Currently, Section (s) 1028(a)(7) prohibits only the knowing use or transfer without lawful authority, of another person's means of identification.  This mean that Section (s) 1028(a)(7) addresses only those situations in which a defendant can be proved to have obtained someone else's means of identification and actually put that means of identification to use, or to have transferred it to another person or location where it can be put to use.  <u>In some situations, however, law enforcement authorities may apprehend someone who has wrongly acquired another's means of identification, but has not yet put it to use or transferred it elsewhere</u>.

Id., emphasis supplied.

The amendment to 1028(a)(7) was designed to allow easier prosecution of those who have stolen the identity of another but who have not had the occasion to use or transfer the identity of that other person. The requirement that the identity be that of another person remains in effect.[1]

## CONCLUSION

For the reasons states in Defendant's Motion to Dismiss Count III of the Indictment, and those contained herein, defendant prays this Honorable Court dismiss count III of the Indictment.

Respectfully submitted,

/s/
Steven R. Kiersh #323329
717 D Street, N.W., Suite 400
Washington, DC 20004
(202) 347-0200

---

[1] Defendant further argues that even if the amendment to 1028(a)(7) is as the government suggests, that does not effect the mens rea found in 1028 A. If Congress meant to change that requirement, it had the opportunity to do so and in fact has not done so.

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and accurate copy of the foregoing was served upon Frederick Yette, Esquire, Assistant U.S. Attorney, via PACER, on this the 21st day of March, 2007.

                                                            /s/
                                                  Steven R. Kiersh